O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>GUILLERMO DE LOS ANGELES<br><br>    Defendant. | Case № 15-CR-00213-ODW<br><br>**ORDER DENYING DEFENDANT'S MOTION PURSUANT TO MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) [DE-119][1]** |

## I.    INTRODUCTION

Defendant De Los Angeles has brought a motion for reduction in his sentence on ground that he qualifies for compassionate release.  Specifically, he states he has difficulty breathing and sleeps with a CPAC machine.   He has been provided with a continuous positive airway pressure machine to .help him sleep.  The continuous positive airway pressure helps keep the airway open.  In addition he claims to have high blood pressure, high cholesterol and is obese.  His high blood pressure and cholesterol is being controlled by medication.  He has petitioned the warden for

---

[1] "DE" designates Docket Entry

release because in the midst of the COVID-19 Pandemic, he feels he is at higher risk of a far more serious outcome should he become infected.

### A. Procedural History

On April 17, 2015, the January 2015 Grand Jury returned a three-count Indictment in which Defendant was solely named. The indictment charged Defendant with conspiracy to distribute and distribution of over 50 grams of methamphetamine. In addition, the government filed a 18 U.S.C. § 851 Information alleging three prior felony drug convictions. [DE-25].

On August 17, 2015, defendant Guillermo De Los Angeles pled guilty to Count One of the three-count Indictment. Count One charges a violation of 21 U.S.C. § 846: Conspiracy to Distribute Methamphetamine. Specifically, it alleges that beginning on an unknown date and continuing until July 2, 2012, De Los Angeles and others conspired to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a), (b)(1)(A). The parties stipulated to a base offense level of 30 pursuant to USSG §2D1.1(c)(5) and reserved the right to argue for additional specific offense characteristics, adjustments, departures, and variances. The USAO agreed to move to dismiss Counts One and Two of the 851 Information; and to recommend up to a three-level reduction for acceptance of responsibility. The parties agreed to a waiver of appeal and collateral attack. [DE-94]]. On June 3, 2019 Defendant was sentenced to the 120-month mandatory minimum to be followed by 10 years supervised release. [DE-105.]

## II.   DISCUSSION

### A. Defendant Has Not Made a Case for Compassionate Release

Because the requested relief is both drastic and permanent, it is subject to strict statutory conditions. First, a district court can evaluate a defendant's request

for compassionate release only "after the defendant has fully exhausted all administrative rights" before the Bureau of Prisons ("BOP"). Specifically: after the defendant has fully exhausted all administrative rights to appeal, a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.] 18 U.S.C. § 3582(c)(1)(A). This requirement is mandatory. *United States v. Alam,* 960 F. 3d 831, 832 (6th Cir. 2020); *United States v.Raia, 954* F. 3d 594, 597 (3d Cir. 2020. From the standpoint of the district court it is jurisdictional. See generally *Shaw v. Bank of America Corp.,* 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction"); *United States v. Weidenhamer*, No. CR 16-1072-1-PHXROS, 2019 WL 6050264, at *2 (D. Az. Nov. 8, 2019) (citing cases). Second, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements. See *id.*; 28 U.S.C. § 994(t); USSG § 1B1.13. Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A). Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG § 1B1.13. *Id*.

Here, it appears that the first requirement has been met. Defendant has petitioned the BOP requesting release on the same grounds advanced here.

### 2 DEFENDANT IS NOT MEDICALLY ELIGIBLE FOR COMPASSIONATE RELEASE

To be eligible for compassionate release, a defendant must demonstrate "extraordinary and compelling reasons warrant[ing] such a reduction," "consistent

with applicable policy statements issued by the Sentencing Commission." *Id*. Thus, as courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority). The Sentencing Commission's policy statement — USSG § 1B.1.13 — is thus binding on this Court. See *Dillon vs. United States*, 560 U.S. 817, 827 (2010); see, e.g., *United States v. Nasirun*, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020). But see *United States v. Brooker,* 2020 WL 5739712, at *6–7 (2d Cir. Sept. 25, 2020) (finding that USSG 1B1.13 Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]" *United States vs. Eberhart*, 448 F. Supp. 3d 1086, 1090 (NDCA 2020. Those criteria include, as relevant here:

- The medical condition "of the defendant": specifically, whether the defendant has either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [s]he . . . is not expected to recover." USSG § 1B1.13, comment. (n.1(A)(i)-(ii));

- The "age of the defendant": specifically, whether defendant is "at least 65 years old," is "experiencing a serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of her term of imprisonment. *Id.,* comment. (n. 1(B)); or

- "As determined by the Director of the Bureau of Prisons, there exists in the

defendant's case an extraordinary and compelling reason other than, or in combination with," her illness, age, and family circumstances. *Id.,* comment. (n.1(D)).

The global COVID-19 pandemic is not a factor specific to defendant's case at all — and, while his anxieties may or may not be frivolous, he offers no case-specific facts establishing his eligibility for compassionate release under USSG § 1B1.13. Although identifying some specific health concerns, the most relevant of which is his breathing, for which he has a CPAP machine, he primarily emphasizes the general risk of COVID-19: arguments that are general, wide-ranging, and would apply to essentially every inmate presently in custody. The medical records he has supplied, while sparse, do not demonstrate that he has sought medical treatment, beyond the medications he is taking, to address his concerns. Indeed, the scant medical file undermines any claim that he suffers from a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [s]he . . . is not expected to recover." USSG § 1B1.13, comment. (n.1(A)(i)-(ii)); In point of fact, those record indicate he has no medical restrictions.

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, *supra,* 954 F.3d at 597; see also *Eberhart*, *supra,* 448 F. Supp. 3d at 1090 ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental real-world effects: interfering

with BOP's organized anti-COVID-19 efforts, resulting in the inequitable treatment of inmates, and undercutting the strict criteria BOP employs to determine inmates' eligibility for sentence reductions and home confinement.  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic.

Indeed, the primary thrust of Defendant's argument centers on his breathing difficulties, which are addressed with his CPAP.  Apparently his breathing difficulties manifest only during his sleep.  His other ailments appear to be suitably addressed with medication.  Therefore, to the extent he has conditions which the CDC has indicated may result in a more serious outcome in the event one with those conditions contracts the virus, he would appear not to now have those conditions to such a degree that they interfere with his daily life.  Yet, he feels these conditions create an extraordinary and compelling reason which warrants his early release from prison.  The Court disagrees. His medical conditions, neither separately nor in combination are sufficient to permit his early release under section 3582(c)(1)(A). Therefore, his request is **DENIED.**

**IT IS SO ORDERED.**

DATED:    February 1, 2021

_____
OTIS D. WRIGHT,II
UNITED STATES DISTRICT JUGE